UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| V. | ) Criminal No. 6:15-cr-0043-GFVT-HAI-1 |
| RALPH MINIET, | ) **MEMORANDUM OPINION** |
| Defendant. | ) **&** |
| | ) **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

After nearly two weeks of trial and deliberations, a jury acquitted Defendant Ralph Miniet of conspiracy to commit money laundering but failed to render a verdict as to conspiracy to distribute oxycodone. [R. 300.] Upon motions by Dr. Miniet, the Court granted a partial verdict as to the money laundering and declared a mistrial as to the distribution charge. [R. 296.] Dr. Miniet has now filed a Motion for Judgment of Acquittal as to the distribution charge pursuant to Federal Rule of Criminal Procedure 29. [R. 328.] Dr. Miniet believes that no reasonable juror could find sufficient evidence to sustain a conviction for conspiracy to distribute oxycodone. However, because the Court finds such sufficient evidence, the Court **DENIES** Dr. Miniet's Motion.

**I**

Dr. Ralph Miniet was charged on November 5, 2015, with one count conspiracy to distribute pills containing oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [R. 1.] That indictment was superseded on March 24, 2016, to add conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). [R. 82.] According to the Superseding

Indictment, Dr. Miniet, along with Rolando Boada, Maria Boada, and Sonia Castellon, owned, operated, and/or were employed by Angel's Medical Services. *Id*. at 2–3. Angel's was a pain management clinic in Miami, Florida, where, according to the Superseding Indictment, the Defendants illegally dispensed and distributed oxycodone by providing if for nonlegitimate medical purposes. *Id*. Specifically, groups traveled from southeastern Kentucky to Miami to be treated at Angel's and receive oxycodone pills, which were then resold throughout the Eastern District of Kentucky. *Id*. at 3–4. The Superseding Indictment alleges that Dr. Miniet and his Co-Defendants knew, or should have known, about this scheme to acquire and distribute those pills. *Id*.

Before Dr. Miniet's trial, Co-Defendants Rolando Boada, Maria Boada, and Sonia Castellon all entered guilty pleas to conspiracy to distribute oxycodone. [R. 246; R. 247; R. 248.] All three were sentenced on March 7, 2018. [R. 241; R. 242; R. 243.] All three testified at trial for the Government. [R. 321; R. 322.]

During its case in chief, the Government presented evidence seeking to prove that Dr. Miniet knew about the illegal distribution of oxycodone and that he was a part of the conspiracy with Rolando Boada, Maria Boada, and Sonia Castellon. According to the Government's theory, Dr. Miniet knew or should have known that the patients at Angel's were acquiring oxycodone for distribution, and as the only physician on staff, he continued to write prescriptions for these patients, knowing they were using them for an unlawful purpose. [R. 319 at 17–25.] Dr. Miniet maintained that he was unaware of the conspiracy involving Ms. Castellon and Mr. and Mrs. Boada, specifically because their illegal actions were kept secret from Dr. Miniet. [R. 319 at 26–33.] At the conclusion of the Government's case in chief, Dr. Miniet moved for a Judgment of Acquittal pursuant to Rule 29, which the Court denied. [R. 293.] Dr. Miniet renewed this

motion at the close of trial, and the Court again denied the motion. [R. 294.] The jury began their deliberations on September 11, 2018, continuing on through September 12 and into the afternoon of September 13. [R. 294; R. 295; R. 296.] On September 13, the jury indicated they could not come to a unanimous decision concerning the distribution of oxycodone. [R. 301.] Following the grant of a mistrial, Dr. Miniet filed another Rule 29 motion. [R. 328.] After considering the arguments and the evidence presented by the Government during trial, the Court denies the request for post-trial relief.

## II

### A

Rule 29 requires this Court to enter a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). When considering a Rule 29 motion based on an alleged insufficiency of the evidence, the Court may not reweigh the evidence, reevaluate the credibility of witnesses, or substitute its judgment for that of the jury. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Instead, the Court views all of the evidence in the light most favorable to the Government, and then it considers whether any rational trier of fact could find the elements of the counts of conviction beyond a reasonable doubt. *See, e.g.*, *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). "In sum, a defendant claiming insufficiency of the evidence bears a very heavy burden." *Callahan*, 801 F.3d at 616 (quoting *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007)). Because Dr. Miniet has failed to sustain this burden, the Rule 29 motion is denied.

A review of the trial evidence demonstrates that a rational trier of fact could conclude Dr. Miniet was guilty beyond a reasonable doubt of the charge of conspiracy to distribute

oxycodone. At this stage, it is important to note that the jury did not return a verdict as to that count, however, a mistrial is not the same as an acquittal. A mistrial here was granted after the jury was unable to come to a unanimous decision as to Count 1. [R. 296; R. 301.] Simply because the jury could not come to a unanimous decision does not mean there was insufficient evidence for a conviction. Any implication by Dr. Miniet that a mistrial supports his Rule 29 motion is therefore misplaced.

To find Dr. Miniet guilty of a conspiracy to illegally distribute drugs, the jury must find a conspiracy existed, Dr. Miniet knew of that conspiracy, and Dr. Miniet knowingly and voluntarily joined the conspiracy. *United States v. King*, 272 F.3d 366, 370 (6th Cir. 2001). The jury may infer knowledge of and participation in the conspiracy based on a defendant's "actions and reactions to the circumstances." *Id*. (quoting *United States v. Barrett*, 933 F.2d 355, 359 (6th Cir. 1991).

Dr. Miniet presents two arguments in support of his motion. First, he argues the Government presented no evidence that he knowingly and voluntarily joined the alleged conspiracy. [R. 328 at 8.] Next, he claims that there was no evidence he dispersed or distributed oxycodone for any purpose other than a legitimate medical one. *Id*. The Government argues that Dr. Miniet's motion is untimely, leaving the Court without jurisdiction to rule on the matter. [R. 329 at 3.]

**B**

**1**

A motion pursuant to Rule 29 must be made within fourteen days after either a guilty verdict or after the Court discharges the jury. Fed. R. Crim. Pro. 29(c)(1). Here, the Court discharged the jury on September 13, 2018, following declaration of a mistrial. [R. 296; R. 305.]

A party may request an extension of this time if the request is filed before the expiration of the initially prescribed deadline. Fed. R. Crim. Pro. 45(b)(1)(A). If a party moves for an extension after that expiration, the movant must demonstrate excusable neglect as to why he or she failed to request such an extension earlier. Fed. R. Crim. Pro. 45(b)(1)(B). Counsel for Dr. Miniet failed to request an extension before the fourteen-day window for a Rule 29 motion had closed. However, on October 6, 2018, less than ten days after the expiration of time, Dr. Miniet filed a motion under Rule 45(b)(1)(B), stating excusable neglect. [R. 315.] Notably, the Government did not object to that requested relief. *Id*. at 3. The Court found excusable neglect and granted Dr. Miniet's motion. [R. 316.] The cases cited by the Government all predate the 2002 and 2005 amendments to the Federal Rules of Criminal Procedure, whereby Rule 45(b) relief is no longer excluded for motions made pursuant to Rules 29, 33, and 34. Under the Rules as written during all times relevant to this matter, a defendant may seek an extension of time for the motion, and the Court may consider untimely motions after determination that the failure to file a timely motion was the result of excusable neglect. *See* Fed. R. Crim. Pro. 45, Advisory Committee Note to the 2002 Amendments.

**2**

Dr. Miniet first contends that there was no evidence that he knowingly and voluntarily joined the alleged conspiracy. [R. 328 at 8.] The Government was only required to establish that Dr. Miniet knew of the objective of the conspiracy and voluntarily associated himself with the conspiracy to further that objective. *United States v. Smith*, 749 F.3d 465, 477 (6th Cir. 2014). During trial, Task Force Officer Richard Dalrymple testified that a large number of people from southeastern Kentucky were traveling to Angel's in Florida, seeing Dr. Miniet, and returning with oxycodone pills to distribute on the street. [R. 319 at 52–54.] Donna Sexton discussed, at

length, her nineteen-hour drive to see Dr. Miniet at Angel's. [R. 320 at 211.] She testified that Dr. Miniet did not perform any type of physical examination, and that after only five minutes and an MRI, she received a prescription of oxycodone. *Id*. at 211–15. According to her testimony, she was not requested to bring prior medical records, and no one discussed with her the potential for opioid addiction. *Id*. at 214. She also explained to the jury that the waiting room was crowded and at times, standing-room only. *Id*. at 218–19. Based on her experience with her daughters' addictions, she recognized that many in the waiting room were also addicts. *Id*. at 219.

Rick Saylor testified that the clinic only took cash and did not accept insurance. [R. 321 at 61–62.] He told the jury that patients could see into Dr. Miniet's office because it was glass, and that he left the door open while patients were visiting with him. *Id*. at 63–64. According to Mr. Saylor, Dr. Miniet would fill out a patient's chart for about five minutes, ask a couple of questions, and then send the patient back to the waiting room. *Id*. at 64. After approximately twenty minutes, the office manager (known to the Court to be Rolando Boada) would bring the patient a prescription for oxycodone. *Id*. Like Ms. Sexton, Mr. Saylor insisted that Dr. Miniet only needed an MRI and did not perform a physical exam before signing a prescription for oxycodone. *Id*. at 64–65. He also testified that Dr. Miniet never requested any previous medical records or prescription records. *Id*. at 66–67. At each of five visits to Angel's, Mr. Saylor received prescriptions for oxycodone, Lortab, Valium, and/or Norco. *Id*. at 69–71. After one visit, Mr. Saylor had difficulty finding a pharmacy that would fill his prescription was for five 30-milligram tablets of oxycodone per day, as he was told that amount was too high. *Id*. at 71. Mr. Saylor claimed he sent his prescription with a friend to Angel's, and Dr. Miniet modified it to 20-milligram tablets without Mr. Saylor coming back into the clinic. *Id*. He also testified that

6

he watched Dr. Miniet sign the prescriptions himself while he was in the clinic. *Id*. at 72

Finally, Dr. Miniet's Co-Defendants claimed that he was aware of the conspiracy and knowingly and voluntarily participated in that conspiracy. Sonia Castellon, Maria Boada, and Rolando Boada each entered guilty pleas to conspiracy to distribute oxycodone. [R. 178; R. 179; R. 180.] Each of them testified against Dr. Miniet. [R. 321; R. 322.] Sonia Castellon and Maria Boada owned Angel's Medical Services. [R. 321 at 181.] Ms. Castellon told the jury they hired Dr. Miniet from another pain clinic that had closed sometime around 2013. *Id*. at 184–85. She maintained Angel's paid him a set amount per patient and he was the only person in the clinic who signed prescriptions for patients. *Id*. at 186–89. According to her, the clinic sometimes saw over fifty patients a day. *Id*. at 193. Rolando Boada claimed the patients visited with Dr. Miniet no more than five or six minutes, and he never saw Dr. Miniet give a physical examination. [R. 322 at 136–37.] He witnessed only Dr. Miniet sign prescriptions and indicated some patients did not even need to see Dr. Miniet before receiving a prescription. *Id*. at 140–41. Maria Boada told the jury another doctor previously worked with Dr. Miniet at Angel's but left the clinic because he was uncomfortable with Dr. Miniet accepting these patients. *Id*. at 174.

Dr. Miniet does not contest the existence of a conspiracy, just his participation in one. While Dr. Miniet may not have had an agreement with the patients or Co-Defendants [*See* R. 328 at 10], such an explicit agreement is not necessary. *Smith*, 749 F.3d at 477. Though the Government's response is devoid of any reference to the record, the Court has determined independently that the Government provided sufficient evidence at trial for a rational trier of fact to convict Dr. Miniet. Evidence was introduced that Dr. Miniet's pain clinic had a high volume of patients who seemed to be addicted to pain killers, and yet, testimony also indicated he continued to prescribe oxycodone. He was aware of the number of patients lining his waiting

7

room because he could see them through the glass windows of his office. He knew the number of patients he saw was abnormal, as he testified seeing only six to eight patients at his former clinic, but up to twenty per day at Angel's. [R. 323 at 136, 140.] Even after Dr. Miniet was aware that pharmacies were not filling his prescriptions because of such red flags, he continued to do so. [R. 321 at 71.]

Further, while Dr. Miniet may contest the accuracy of these facts, the Court is not permitted to reweigh the evidence. *See United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). Viewing the testimony and evidence in the light most favorable to the Government, a rational trier of fact could have reasonably concluded that Dr. Miniet knew of the scheme because the Government presented ample evidence from which the jury could infer Dr. Miniet's knowledge of illicit activity and his continued participation.

### 3

Finally, Dr. Miniet contends that the Government failed to provide evidence that he wrote such prescriptions without a legitimate medical purpose. [R. 328 at 11.] The Government again offers no rebuttal and no reference to the record, claiming instead the Government did not need to provide expert testimony to establish a lack of legitimate medical purpose. [R. 336 at 6.] Even so, the Court finds sufficient evidence was presented at trial that a rational trier of fact could find Dr. Miniet had no legitimate medical purpose to prescribe oxycodone. Multiple witnesses agreed that he visited with patients less than ten minutes each before prescribing them oxycodone. [*See e.g.* R. 320 at 211–15; R. 321 at 64; R. 322 at 136–37.] Several patients acknowledged he never asked to see previous records or prescriptions. [*See e.g.* R. 320 at 211; R. 321 at 66–67.]

The Government also called Dr. Gary M. Reisfield, M.D., as an expert witness. [R. 320.] Dr. Reisfield testified that opioids are not only a small part of the practice of pain management, they are also not the preferred method or the first choice of treatment for pain management. *Id.* at 91–92. He listed other types of medications (i.e. non-steroidal non-inflammatory drugs), physical therapy, injections, and self-care as alternative, and more preferred, methods of pain management. *Id.* He testified that he requests a full history from his pain patients, including the types of treatments they have received, the medications they have been prescribed, their medical and prescription records, and/or further testing such as X-rays or blood work. *Id.* at 97–98. He also elaborated on things he considered to be "red flags" about illegitimate medical practices, include prescriptions for 30-milligram opioids. *Id.* at 113–14. While he never explicitly states that Dr. Miniet was not prescribing for nonlegitimate medical purposes, he outlines a picture of a nonlegitimate clinic that fits the testimony concerning Angel's: brief patient visits of only a few minutes, no requirement to provide previous medical or prescription records, only accepts cash, and patients who travel great distances. *Compare id.* at 114 *with supra* II(B)(2).

The jury is not required to ignore their common sense. Sixth Circuit Pattern Jury Instruction 1.05, *Consideration of Evidence*. The jury instructions encourage a jury to reach a conclusion if the evidence reasonably leads to that conclusion. *Id.* Here, viewing the evidence in the light most favorable to the Government, the testimony of Dr. Reisfield, in conjunction with the testimony outlined previously from Mr. Boada, Mrs. Boada, Ms. Castellon, Ms. Sexton, and Mr. Saylor, could reasonably lead a juror to conclude that Dr. Miniet was issuing prescriptions for a nonlegitimate purpose.

**III**

Dr. Miniet maintains that he may have been negligent, but he did not commit the crime for which he has been charged. He offers alternative conclusions drawn from the evidence presented at trial, however, the Court may not reevaluate the credibility of witnesses or view that evidence in a light more favorable to Dr. Miniet. *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016); *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003). Here, Dr. Miniet has failed to meet the heavy burden of demonstrating insufficient evidence. Accordingly, for the foregoing reasons, the Court hereby **ORDERS** that Dr. Ralph Miniet's Rule 29 Motion [**R. 328**] is **DENIED**. The Court finds that he is not entitled to a judgment of acquittal.

This the 13th day of March, 2019.

Gregory F. Van Tatenhove
United States District Judge